NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WEST COAST LIFE INSURANCE COMPANY, | Hon. Dennis M. Cavanaugh |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 09-CV-2761 (DMC) |
| THE HARRY ESSES 2007-1 INSURANCE TRUST, by and through its Trustees, et al. | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by The Harry Esses 2007-1 Insurance Trust, Wells Fargo Bank, N.A., Kevin O'Brien, Life Brokerage Partners, LLC, Kevin Bechtel, individually and as principal of Life Brokerage Partners, A. Ravi Malick, Stephen B. Wechsler, individually and as principal of the Wechsler Financial Group, Inc. and the Wechsler Financial Group, Inc. ("Defendants") seeking abstention, or, in the alternative, transfer pursuant to 28 U.S.C. § 1404 or dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), (2) and Fed. R. Civ. P. 9(b). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of all parties, and based upon the following, it is the conclusion of this Court that Defendants' motion for abstention is **granted**, the motion to transfer is **denied** as moot and judgment concerning the motion to dismiss is **reserved**.

I. **BACKGROUND**[1]

West Coast Life Insurance filed the Original Complaint on June 5, 2009. An Amended Complaint was filed on September 17, 2009. Pursuant to the Amended Complaint, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201, rescinding, or, in the alternative voiding, a $6,000,000 life insurance policy issued by Plaintiff on the life of Harry Esses (the "Insured"), a citizen and resident of New Jersey. The Amended Complaint alleges that "West Coast relied upon false representation[ ] documents submitted by Defendants in a fraudulent scheme designed to procure life insurance on Mr. Esses and then sell interests in the Policy to unrelated investors who are speculating on his life." (Amended Complaint ("Am. Compl."), ¶ Introduction).

The policy indicates that it was signed in Fort Worth, Texas. The Insured is domiciled in New Jersey and cannot recall ever have been in Texas or signing a contract there.

The owner of the policy is the Harry Esses 2007-1 Trust (the "Trust"). The Trust is domiciled in Fort Worth, Texas. The beneficiary of the Harry Esses 2007-1 Insurance Trust is the Life Accumulation Trust. Wells Fargo is the Trustee of the Trust. The Life Accumulation Trust is domiciled in the State of Delaware.

Plaintiff alleges that the insurance policy at issue was procured pursuant to the "Granite Program." This program offers a prospective insured, an incentive fee, consisting of a percentage of the value ultimately to be paid out through the policy, in exchange for procurement of the life insurance policy with investors as the ultimate beneficiaries.

Presently pending before the Texas State Court is a proceeding (the "Texas action") wherein the named Defendants in this Court are proceeding as Plaintiffs, alleging a "scheme of insurers to

---

[1] The facts contained herein have been adopted from the parties' respective submissions.

2

solicit business from Texas policy owners and then wrongfully purport to rescind policies later deemed by them to be unprofitable." In a decision by the United States District Court for the Northern District of Texas, Forth Worth Division, remanding the action to Texas State Court, the Court indicates that "Wells Fargo filed suit regarding other policies against West Coast and defendant American General Life Insurance Company ("American General") in Texas state courts, arguing that the defendants insurance companies were attempting to wrongfully rescind the policies." [sic]. Wells Fargo Bank, N.A. v. American General Life Ins. Co., No. 09-712, slip. op. at 2 (N.D. Tex. Feb. 24, 2010). Pursuant to the Texas action, Defendants contend that the life insurance policies at issue are owned by trusts created and organized under Texas law, with their principal place of business in Fort Worth, Texas. Each trust is administered in Texas and each trust was formed with the express purpose of owning a Texas insurance policy on the life of the trust's settlor.

## II. DISCUSSION

Defendants request this Court to abstain from exercising jurisdiction over the instant matter consistent with the Brillhart abstention doctrine. By contrast, Plaintiff asserts that this Court should not abstain from exercising jurisdiction consistent with the mandates of the Colorado River Abstention Doctrine.

"In Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494-95 [ ] (1942), the Court held that when a federal suit is brought under the Federal Declaratory Judgments Act, 28 U.S.C. § [2201] presenting only questions of local laws, the court is under 'no compulsion to exercise [] jurisdiction' if a parallel state court proceeding would address the matters in controversy between the parties." Marshall v. Lauriatt, 372 F.3d 175, 183 (3d Cir. 2004). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in

3

deciding whether to declare the rights of litigants." Id. (citing Wilton v. Seven Falls, 515 U.S. 277, 286 (1995)). "Thus, courts are permitted to avoid gratuitous interference with state court matters by abstaining from claims for declaratory judgment, specifically if the state court proceedings would address 'the same issues, not governed by federal law, between the same parties.'" Id. (internal citations omitted).

"The *Colorado River* doctrine allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding." Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 307 (3d Cir. 2009); see Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). "The doctrine is to be narrowly applied in light of the general principle that 'federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" Id. "The initial question is whether there is a parallel state proceeding that raises 'substantially identical claims [and] nearly identical allegations and issues.'" Id. (citing Yang v. Tsui, 416 F.3d 199, 204 n.5 (3d Cir. 2005)). "If the proceedings are parallel, courts then look to a multi-factor test to determine whether 'extraordinary circumstances' meriting abstention are present." Id. at 307-08 (citing Spring City Corp. v. American Bldgs. Co., 193 F.3d 165. 171 (3d Cir. 1999)). "In determining whether an action presents 'extraordinary circumstances' we consider six factors:"

> (1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.

Id. (citing Spring, 193 F.3d at 165). "No one factor is determinative; a carefully considered judgment

taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." Id. (citing Colorado River, 424 U.S. at 818-19). However, "the balancing of factors is heavily weighted in favor of the exercise of jurisdiction." Id. (citing Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983)).

In assessing whether the applicable standard in a declaratory judgment case is the Brillhart abstention doctrine or the Colorado River abstention doctrine, the United States Supreme Court in Wilton v. Seven Falls Co. articulated the following:

> Relying on these post-Brillhart developments, London Underwriters contend that the *Brillhart* regime, under which district courts have substantial latitude in deciding whether to stay or to dismiss a declaratory judgment suit in light of pending state proceedings (and need not point to "exceptional circumstances" to justify their actions), is an outmoded relic of another era. We disagree. Neither *Colorado River,* which upheld the dismissal of federal proceedings, nor *Moses H. Cone,* which did not, dealt with actions brought under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) [ ]. Distinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the "exceptional circumstances" test of *Colorado River* and *Moses H. Cone.* No subsequent case, in our view, has called into question the application of the *Brillhart* standard to the *Brillhart* facts.
>
> Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. On its face, the statute provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration," 28 U.S.C. § 2201(a) [ ]. (internal citations omitted). The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface.

515 U.S. 277, 286-88 (1995). The Court concluded, "[w]e have repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" Id. (citing Public Serv. Comm'n of Utah v. Wycoff Co., 344

5

U.S. 237, 241 (1952)). "[A] district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Id. at 288. "We note that where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy."

As an initial matter, consistent with the Wilton case, this Court concludes that the applicable standard in an action seeking pure declaratory relief is the Brillhart abstention doctrine. Further, there is a parallel state court proceeding in Texas involving primarily the same parties, including West Coast Life Insurance and Wells Fargo Bank, N.A.. The Court agrees with Defendants that "both actions have at their heart the questions of whether the Trust had a valid insurable interest in the life of the insured at the time the Policy was issued, and whether the policy application contained financial [or other] misrepresentations." The Amended Complaint indicates that with respect to the actual controversies at issue, a declaratory judgment "will completely resolve the controversies among the parties." ("Am. Compl., ¶ 46). In the interest of conservation of judicial resources and the potential for inconsistent judgments, this Court will abstain from hearing this matter and any attendant motions until the conclusion of the parallel state court proceeding. In order to preserve the statute of limitations, the present action is not dismissed, but is stayed pending the conclusion of the parallel state court proceeding.

**III.   CONCLUSION**

For the foregoing reasons, Defendants' motion for abstention is **granted**, the motion to transfer is **denied** as moot and judgment concerning the motion to dismiss is **reserved**. An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh<br>Dennis M. Cavanaugh, U.S.D.J.

Dated:       April 22, 2010
cc:            All Counsel of Record
              Hon. Claire C. Cecchi, U.S.M.J.
              File